Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of ANNIE A. WHITE, Respondent, for Compensation under the Workmen's Compensation Law for the Death of JOHN G. WHITE, *v.* AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, Employer, and TRAVELERS INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, March 3, 1920.

Workmen's Compensation Law — death from anthrax — evidence insufficient to sustain award — presumption under section 21 — hearsay testimony.

An award under the Workmen's Compensation Law for death from anthrax was sought to be sustained on two theories, *first*, an injury arising in the course of the employment, consisting of an abrasion of the nose caused by a wire on a bale of hay through which abrasion the anthrax infection entered the system of the deceased; and *second*, an injury not arising in the course of the employment, consisting of a boil in his nose through an incision of which the disease infection entered.

*Held*, that there is no competent evidence that the deceased received an abrasion from a wire or otherwise or that he contracted the disease in the course of his employment, and, therefore, the award must be reversed and the matter remitted to the Commission.

A claimant must prove an accident arising out of and in the course of the employment and cannot rely on the presumption of section 21 of the Workmen's Compensation Law as a substitute for such proof.

A claimant must produce some legal evidence and cannot rely exclusively on hearsay testimony.

JOHN M. KELLOGG, P. J., dissents, with opinion.

APPEAL by the defendants, American Society for the Prevention of Cruelty to Animals and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 8th day of September, 1919.

The deceased employee, John G. White, was an ambulance driver for the appellant American Society for Prevention of Cruelty to Animals. The cause of his death was anthrax. The Commission has made findings as follows: " On or about March 15, 1918, while the said John G. White was engaged in the regular course of his employment and while opening up a bale of hay, a wire on the said bale of hay struck the said John G. White on the inside of the nose causing an abrasion

of the nose.  Thereafter a boil formed in that part of the nose which had been injured when the said wire struck the said John G. White.  Thereafter, one Dr. Awerta operated upon the nose of the said John G. White in treating the boil which had formed there.  During the period of the time of the abrasion on the nose of the decedent caused by being struck by the wire, and the incision made by Dr. Awerta in treatment of the boil which had formed on the nose of the decedent, he was called upon to handle and care for sick and lame and infected animals and horses.  Thereafter, and on March 23, 1918, the said John G. White died as a direct result of having contracted anthrax in the course of his employment.  The said anthrax infection having entered into the system of the decedent, while engaged in the course of his employment in handling sick and infected animals, through the abrasion which was caused by being struck in the nose by a wire on a bale of hay on or about March 15, 1918, together with the incision made by Dr. Awerta in treating him for a boil which formed on his nose thereafter.''

*Amos H. Stephens* [*E. C. Sherwood* and *William B. Davis,* of counsel], for the appellants.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

COCHRANE, J.:

The findings as above set forth suggest two theories on which it is sought to sustain this award, *first,* an injury arising in the course of the employment consisting of an abrasion of the nose caused by a wire on a bale of hay through which abrasion the anthrax infection entered the system of the deceased, and *second,* an injury not arising in the course of the employment consisting of a boil in his nose through an incision of which the disease infection entered.

As to the first theory there is no competent evidence that the deceased received an abrasion from a wire or otherwise.  Two witnesses testified that he so informed them and the finding to that effect rests entirely on this hearsay testimony.  His wife disclaims that he so told her and no witness testifies to seeing a scratch or any indication of such an injury.

It is now well established that a claimant must prove an accident arising out of and in the course of the employment and that he cannot rely on the presumption of section 21 of the Workmen's Compensation Law as a substitute for such proof. (*Matter of Collins* v. *Brooklyn Union Gas Co.*, 171 App. Div. 381; *Matter of Eldridge* v. *Endicott, Johnson & Co.*, 228 N. Y. 21.)

It is equally well settled that in making such proof a claimant must produce some legal evidence and cannot rely exclusively on hearsay testimony. (*Matter of Belcher* v. *Carthage Machine Co.*, 224 N. Y. 326; *Matter of Hansen* v. *Turner Construction Co.*, Id. 331; *Matter of Carroll* v. *Knickerbocker Ice Co.*, 218 id. 435.) The claim of an accident causing an abrasion must, therefore, fail.

As to the second theory that an anthrax germ attacked the deceased through an incision in the boil there is no evidence that he contracted the disease in the course of his employment. It does not appear that any of the animals with which he came in contact had anthrax. It does not even appear that about the time when he contracted the disease he came in contact with any diseased animal except a lame horse nor with any other kind of animal either sick or well except horses. It does not appear that the disease is peculiar to horses. No evidence was given as to the nature of anthrax nor as to the circumstances or conditions under which it attacks mankind. Because the deceased died of anthrax and because his employment was in connection with animals the Commission has concluded that a causal relation between his employment and death existed. Such a conclusion is not justified in the absence of evidence establishing a causal relation. The case in this particular is very similar to *Matter of Eldridge* v. *Endicott, Johnson & Co.* (228 N. Y. 21), and is controlled by the decision in that case.

On either theory of the case there is a failure of proof, and the award must, therefore, be reversed and the matter remitted to the Commission.

All concur, except JOHN M. KELLOGG, P. J., dissenting, with an opinion.

JOHN M. KELLOGG, P. J. (dissenting):

We cannot question the decision of the Commission on a question of fact. Concededly the deceased employee had an

injury or pimple in his nose, which had been lanced, and he wore gauze in the nostril. The evidence indicated that the anthrax germ lodged there and caused his death.

In *Richardson* v. *Greenberg* (188 App. Div. 248) we, by a divided court, three to two, held that the mere inhalation or lodgment of a glanderous germ in the nose, although the contact with the germ arose out of the employment, was not an injury arising out of the employment. There the abrasion of the mucous membrane, through which the germ entered, was supposed to have taken place outside of the employment. I think there is evidence here to show that the infection took place in the course of the employment; but if it took place otherwise, I wish to repeat the views expressed in my dissenting opinion in the *Richardson* case.

In *Matter of Eldridge* v. *Endicott, Johnson & Co.* (228 N. Y. 21), recently decided by the Court of Appeals, it was held that judicial notice could not be taken that by handling animals, or hides of animals, anthrax was liable to follow. But in this case we have affirmative evidence upon that subject. The inspector of the defendant says that he was informed from one source that the employee had anthrax. He was asked: " Did you then know the source of anthrax? A. Yes, I know it comes from animals, from the hide or skin of animals. Q. And you knew he was handling animals? A. Yes. Q. So that if he had anthrax it would be your conclusion that he got it while in your employment? A. Of course, I couldn't swear to that. * * * Q. When you say no accident was reported to you, you mean you concluded that anthrax is not an accident and therefore no accident was reported to you? A. A man might take anthrax through an abrasion of the skin, handling a horse, and have no accident. * * * Q. If anthrax was an accident, was an accident reported to you? A. By the physician, in his judgment, what he thought was anthrax."

The widow says that the husband was handling a diseased horse; she did not know what the disease was. The employer could have furnished evidence upon that subject but failed to do so.

Dr. Awerta swore: " Q. Did you think of anthrax? A. I asked him the first time, when he was in my office, and he led me to believe he had nothing to do with animals, that what

he did was more in a clerking capacity, and I ruled that out."
The evidence conclusively proves that he was not employed
in a clerking capacity, but was handling horses. We quote
from Dr. Eberle: " Q. The reason I say that is because those
are pathomonic places; the people get it because they work
around these hides and skins and they scratch themselves or
they shave themselves and so they get it?   A. They might
scratch their nose."

The evidence of the doctors indicates that in a case of this
kind, if the man is working around horses, anthrax is one of the
first things thought about.   The history of the trial shows that
the only inquiry about anthrax was as to whether that was the
cause of death; it was assumed and not denied that if he had
anthrax it arose from his handling horses.   This case, there-
fore, differs from the *Eldridge* case.   I favor an affirmance.

Award reversed and matter remitted to the Commission.